**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| TORY BURCH LLC;<br>RIVER LIGHT V, L.P.,<br><br>              Plaintiffs,<br><br>     v.<br><br>DOES 1 - 100 d/b/a the aliases identified on<br>Schedule "A",<br><br>              Defendants. | Case No. 12-cv-9066<br><br>**Judge Elaine E. Bucklo**<br><br>**Magistrate Judge Jeffrey T. Gilbert** |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' *EX PARTE* MOTION FOR ENTRY OF A (1) TEMPORARY RESTRAINING ORDER, (2) DOMAIN NAME TRANSFER ORDER, (3) ASSET RESTRAINING ORDER, (4) EXPEDITED DISCOVERY ORDER AND (5) SERVICE OF PROCESS BY E-MAIL AND <u>ELECTRONIC PUBLICATION ORDER</u>**

Plaintiffs Tory Burch LLC and River Light V, L.P. (collectively, "Plaintiffs" or "Tory Burch") submit this Memorandum in support of their *Ex Parte* Motion for Entry of a Temporary Restraining Order, Domain Name Transfer Order, Asset Restraining Order, Expedited Discovery Order, and Service of Process by E-mail and Electronic Publication Order (the "*Ex Parte* Motion").

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................................... 1

II.     STATEMENT OF FACTS ............................................................................................ 2
   A.   Tory Burch's Trademarks and Products ..................................................................... 2
   B.   Defendants' Illegal Activities ..................................................................................... 4

III.    ARGUMENT ................................................................................................................. 6
   A.   Standard for Temporary Restraining Order and Preliminary Injunction .................. 9
   B.   Tory Burch will Likely Succeed on the Merits ......................................................... 10
      i.    Tory Burch Will Likely Succeed on Its Trademark Infringement and Counterfeiting
      Claim. ........................................................................................................................... 10

      ii.   Tory Burch Is Likely to Succeed on Its False Designation of Origin Claim ................. 14

      iii.  Tory Burch Is Likely to Succeed on Its Cyberpiracy Claim ......................................... 14

      *1.   Tory Burch's TORY BURCH Trademarks Are Distinctive and Famous* ...................... 15

      *2.   Defendants Have a Bad Faith Intent to Profit from the TORY BURCH Trademarks* ... 15

      *3.   The Domain Names Are Identical or Confusingly Similar to or Dilutive of the TORY
      BURCH Trademarks* ..................................................................................................... 17

      iv.   Tory Burch Is Likely to Succeed on Its Illinois Uniform Deceptive Trade Practice Act
      Claim ............................................................................................................................ 18

   C.   There Is No Adequate Remedy at Law and Tory Burch Is Likely to Suffer Irreparable
   Harm in the Absence of Preliminary Relief ............................................................... 18
   D.   The Balancing of Harms Tips in Tory Burch's Favor ...................................................... 19
   E.   Issuance of the Injunction Is in the Public Interest ......................................................... 20

IV.     THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE ............................................ 21
   A.   A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and
   Illegal Use of Tory Burch's Marks Is Appropriate ..................................................... 21
   B.   An Order Transferring the Defendant Domain Names to Tory Burch's Control Is
   Appropriate ................................................................................................................. 23
   C.   An Order Preventing the Fraudulent Transfer of Assets Is Appropriate ......................... 25
   D.   Tory Burch Is Entitled to Expedited Discovery .............................................................. 27
   E.   Service of Process by E-mail and Electronic Publication Is Warranted in this Case ........ 29

V.      A BOND SHOULD SECURE THE INJUNCTIVE RELIEF ........................................... 33

VI.     CONCLUSION ................................................................................................................ 34

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*Abbott Labs. v. Mead Johnson & Co.,*
    971 F.2d 6 (7th Cir. 1992) ................................................9

*Adidas AG, et al,v. 2012jerseyssale.com, et al.*
    No. 1:12-cv-22263 (S.D. Fla. June 29, 2012)....................7

*Am. Broad. Co. v. Maljack Prods., Inc.,*
    34 F. Supp. 2d 665 (N.D. Ill. 1998) ...............................18

*Bd. of Dirs. of Sapphire Bay Condos. W. v. Simpson,*
    129 F. App'x 711 (3d Cir. 2005) ...................................24

*Brockmeyer v. May,*
    383 F.3d 798 (9th Cir. 2004) .........................................32

*Builder's World, Inc. v. Marvin Lumber & Cedar, Inc.,*
    482 F. Supp. 2d 1065 (E.D. Wis. 2007)..........................33

*Burberry Limited v. John Doe 1 et al.,*
    No. 1:12-cv-0479 (S.D.N.Y Jan. 23, 2012)…………………………………………………7

*Burger King Corp. v. Majeed,*
    805 F. Supp. 994 (S.D. Fla. 1992) ................................19

*CAE, Inc. v. Clean Air Eng'g Inc.,*
    267 F.3d 660 (7th Cir. 2001) .........................................12

*Chanel, Inc. v. Does 1-172,*
    No. 2:10-cv-02684-STA-dkv (W.D. Tenn. Oct. 7, 2011) (unpublished) ...................22, 24

*Chanel, Inc. v. Paley,*
    No. 3:09-cv-04979-MHP (N.D. Cal. Mar. 25, 2010) (unpublished) ..........................23, 33

*Chanel, Inc. v. Zhixian,*
    No. 0:10-cv-60585-JIC (S.D. Fla. June 30, 2010) (unpublished)...............................24, 34

*Charter Nat'l Bank & Trust v. Charter One Fin., Inc.,*
    No. 1:01-cv-00905, 2001 WL 527404 (N.D. Ill. May 15, 2001)........................................9

*Columbia Pictures Indus., Inc. v. Jasso,*
    927 F. Supp. 1075 (N.D. Ill. 1996) .................................8

*Deckers Outdoor Corp. v. Does 1-55,*
    No. 1:11-cv-00010 (N.D. Ill. Feb. 3, 2011) (unpublished).........................7, 22, 23, 26, 31

*Deckers Outdoor Corp. v. Does 1-101,*
    No. 1:11-cv-07970 (N.D. Ill. Nov. 15, 2011) (unpublished).....................6, 22, 23, 26, 31

*Deckers Outdoor Corp. v. Does 1-100*,
    No. 1:12-cv-00377 (N.D. Ill. Jan. 27, 2012) (unpublished)..................6, 22, 23, 26, 31, 33

*Deckers Outdoor Corp. v. Does 1-1,281*,
    No. 1:12-cv-01973 (N.D. Ill. April 4, 2012) (unpublished) .................6, 22, 23, 26, 31, 33

*Deckers Outdoor Corp. v. Does 1-100*,
    No. 1:12-cv-04316 (N.D. Ill. June 11, 2012) (unpublished)..................6, 22, 23, 26, 31, 33

*Deckers Outdoor Corp. v. Does 1-100*,
    No. 1:12-cv-5523 (N.D. Ill. July 24, 2012) (unpublished)…………....6, 22, 23, 26, 31, 33

*Deckers Outdoor Corp. v. Does 1-100*,
    No. 1:12-cv-06806 (N.D. Ill. Aug 28, 2012) (unpublished)………......6, 22, 23, 26, 31, 33

*Dorr-Oliver, Inc. v. Fluid-Quip, Inc.*,
    94 F.3d 376 (7th Cir. 1996) ...........................................................................11

*Eli Lilly & Co. v. Natural Answers, Inc.*,
    233 F.3d 456, 461 (7th Cir. 2000) ..............................................10, 11, 18, 20

*Farouk Sys., Inc. v. Eyou Int'l Trading Co., Ltd.*,
    No. 4:10-cv-02672 (S.D. Tex. Aug. 2, 2011) (unpublished) .................7, 22, 23, 26, 31, 34

*Ford Motor Co. v. Lapertosa*,
    126 F. Supp. 2d 463 (E.D. Mich. 2000)...............................................7, 22, 24

*G. Heileman Brewing Co., Inc. v. Anheuser-Busch, Inc.*,
    873 F.2d 985 (7th Cir. 1989) ........................................................................11

*Gateway Eastern Railway Co. v. Terminal Railroad Assoc. of St. Louis*,
    35 F.3d 1134, 1140 (7th Cir. 1994) ...............................................................19

*Gillespie v. Civiletti*,
    629 F.2d 637 (9th Cir. 1980) ........................................................................28

*Gucci Am., Inc. v. Curveal Fashion*,
    No. 1:09-cv-08458-RJS-THK (S.D.N.Y. Oct. 9, 2009) (unpublished) ...........................34

*Gucci Am., Inc. v. Does 1-10*,
    No. 0:10-cv-60328-JAL (S.D. Fla. Sept. 3, 2010) (unpublished)....................................24

*Gucci Am., Inc. v. Yan*,
    No. 0:10-cv-61512-WPD (S.D. Fla. Nov. 2, 2010) (unpublished)....................................24

*Habitat Educ. Ctr. v. U.S. Forest Serv.*,
    607 F.3d 453 (7th Cir. 2010) ........................................................................33

*Harrods Ltd. v. Sixty Internet Domain Names*,
    302 F.3d 214 (4th Cir. 2002) ...................................................................16, 17

*Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*,
    560 F.2d 1325, 1332 (7th Cir. 1977) .................................................................. 18

*Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*,
    174 F.3d 411 (4th Cir. 1999) ........................................................................... 33

*Ideal Indus., Inc. v. Gardner Bender, Inc.*,
    612 F.2d 1018 (7th Cir. 1979) ......................................................................... 18

*Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*,
    846 F.2d 1079, 1092 (7th Cir. 1988) ............................................................... 18

*James Burrough Ltd. v. Sign of the Beefeater, Inc.*,
    540 F.2d 266 (7th Cir. 1976) ........................................................................... 20

*Juniper Networks, Inc. v. Bahattab*,
    No. 1:07-cv-01771-PLF-AK, 2008 WL 250584 (D.D.C. Jan. 30, 2008) ......................... 32

*Kraft Food Holdings, Inc. v. Helm*,
    205 F. Supp. 2d 942 (N.D. Ill. 2002) ............................................................... 22

*Krause Int'l Inc. v. Reed Elsevier, Inc.*,
    866 F. Supp. 585 (D.D.C. 1994) ....................................................................... 19

*Lamparello v. Falwell*,
    420 F.3d 309 (4th Cir. 2005) ........................................................................... 17

*Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*,
    51 F.3d 982 (11th Cir. 1995) ........................................................................... 26

*Libman Co. v. Vining Indus., Inc.*,
    69 F.3d 1360 (7th Cir.1995) ............................................................................ 13

*Lorillard Tobacco Co. v. Montrose Wholesale Candies & Sundries, Inc.*,
    No. 1:03-cv-04844, 2005 WL 3115892 (N.D. Ill. Nov. 8, 2005) ........................... 26, 27

*Louis Vuitton Malletier & Oakley, Inc. v. Veit*,
    211 F. Supp. 2d 567 (E.D. Pa. 2002) ............................................................... 16

*Lucas Nursery & Landscaping, Inc. v. Grosse*,
    359 F.3d 806 (6th Cir. 2004) ........................................................................... 15

*MacLean-Fogg Co. v. Ningbo Fastlink Equip. Co., Ltd.*,
    No. 1:08-cv-02593, 2008 WL 5100414 (N.D. Ill. Dec. 1, 2008) ............................ 31

*Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n*,
    929 F. Supp. 473 (D.D.C. 1996) ....................................................................... 20

*Mascio v. Pub. Emp't Ret. Sys. of Ohio*,
    160 F. 3d 310 (6th Cir. 1998) ......................................................................... 33

*Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc.*,
  128 F.3d 1111, 1114 (7th Cir. 1997) ............................................................18

*Nanya Tech. Corp. v. Fujitsu Ltd.*,
  No. 1:06-cv-00025, 2007 WL 269087 (D. Guam Jan. 26, 2007) ......................32

*The Nat'l Football League v. Chen*,
  No. 1:11-cv-00344-WHP (S.D.N.Y. Dec. 7, 2011) (unpublished).................7, 34

*Neopost Industrie B.V. v. PFE Int'l Inc.*,
  403 F. Supp. 2d 669 (N.D. Ill. 2005) ........................................................10, 14

*The North Face Apparel Corp., et al. v. Fujian Sharing Import & Export Ltd. Co., et al.*,
  No. 1:10-cv-01630-AKH (S.D.N.Y. Mar. 16, 2010) (unpublished)............7, 22, 23, 26, 32

*Oppenheimer Fund, Inc. v. Sanders*,
  437 U.S. 340, 351, 98 S.Ct. 2380 (1978)........................................................27

*Philip Morris USA, Inc. v. Otamedia Ltd.*,
  331 F. Supp. 2d 228 (S.D.N.Y. 2004).............................................................24

*Polaroid Corp. v. Polarad Electronics Corp.*,
  287 F.2d 492, 495 (2d Cir. 1961)……………………………………………...10

*Polo Fashions, Inc. v. Craftex, Inc.*,
  816 F.2d 145, 148 (4th Cir.1987) ..................................................................11

*Popular Enters., LLC v. Webcom Media Group, Inc.*,
  225 F.R.D. 560 (E.D. Tenn. 2004).................................................................32

*Promatek Industries, Ltd. v. Equitrac Corp.*,
  300 F.3d 808, 813 (7th Cir. 2002) .................................................................19

*Rathmann Grp. v. Tanenbaum*,
  889 F.2d 787 (8th Cir. 1989) .........................................................................33

*Reebok Int'l Ltd. v. Marnatech Enters., Inc.*,
  970 F.2d 552 (9th Cir. 1992) ...............................................................25, 26, 27

*Re/Max N. Cent., Inc. v. Cook*,
  272 F.3d 424 (7th Cir. 2001) .........................................................................18

*Rio Props., Inc. v. Rio Int'l Interlink*,
  284 F.3d 1007 (9th Cir. 2002) .......................................................................31

*Shashi, Inc. v. Ramada Worldwide, Inc.*,
  No. 7:05-cv-00016-JGW-mfu, 2005 WL 552593 (W.D. Va. Mar. 1, 2005)....................20

*Spex, Inc. v. Joy of Spex, Inc.*,
  847 F. Supp. 567 (N.D. Ill. 1994) ..................................................................17

*Stahly, Inc. v. M.H. Jacobs Co.*,
    183 F.2d 914 (7th Cir. 1950) ........................................................................20

*Tiffany, (NJ), LLC v. 925sterlingstore.com, et al.*,
    No. 12-cv-211160 (S.D. Fla April 4, 2012)……………………………………….7

*Topps Co., Inc. v. Gerrit J. Verburg Co.*,
    41 U.S.P.Q.2d 1412, 1417 (S.D.N.Y.1996)………………………………………...11

*Tory Burch LLC v. Does 1-100*,
    No. 1:12-cv-07163 (N.D. Ill. Sept. 14, 2012).......................................6, 22, 23, 26, 31, 33

*Tory Burch, LLC v. Yong Sheng Int'l Trade Co., Ltd.*,
    No. 1:10-cv-09336-DAB (S.D.N.Y. Jan. 4, 2011) (unpublished) ....................7, 22, 23, 26

*Trans Union LLC v. Credit Research, Inc.*,
    142 F. Supp. 2d 1029 (N.D. Ill. 2001) ........................................................................7, 12

*True Religion Apparel, Inc., v. Xiaokang Lee*,
    No. 1:11-cv-08242-HB (unpublished) (S.D.N.Y. Mar. 12, 2012)....................................34

*TY, Inc. v. The Jones Group, Inc.*,
    237 F.3d 891 (7th Cir. 2001) ..............................................................................9

*Vance v. Rumsfeld*,
    No. 1:06-cv-06964, 2007 WL 4557812 (N.D. Ill. Dec. 21, 2007) ....................................27

*Virtual Works, Inc. v. Volkswagen of Am., Inc.*,
    238 F.3d 264 (4th Cir. 2001) ........................................................................16

*In re Vuitton et Fils, S.A.*,
    606 F.2d 1 (2d Cir. 1979) ............................................................................7

*Web Printing Controls Co., Inc. v. Oxy-Dry Corp.*,
    906 F.2d 1202 (7th Cir. 1990) ........................................................................14

*Wesley–Jessen Division of Schering Corp.v. Bausch & Lomb Inc.*
    698 F.2d 862, 867 (7th Cir.1983) ....................................................................18

**Federal Statutes**

Fed. R. Civ. P. 4(f)(2) ........................................................................................31

Fed. R. Civ. P. 4(f)(3) ........................................................................29, 31, 32

Fed. R. Civ. P. 26(b)(2)........................................................................................28

Fed. R. Civ. P. 64........................................................................................27

Fed. R. Civ. P. 65........................................................................................24, 27, 28

Fed. R. Civ. P. 65(b) ................................................................................................................7, 21

Fed. R. Civ. P. 65 (d)(2)(C) ...............................................................................................24, 27, 28

15 U.S.C. § 1051 .........................................................................................................................8

15 U.S.C. § 1114(1) ...................................................................................................................10

15 U.S.C. § 1116(a) ...................................................................................................................21

15 U.S.C. § 1117 ..................................................................................................................25, 27

15 U.S.C. § 1125(a) ...................................................................................................................14

15 U.S.C. § 1125(d) ...................................................................................................................14

15 U.S.C. § 1125(d)(1)(A) .........................................................................................................14

15 U.S.C. § 1125(d)(1)(B)(i) ......................................................................................................16

17 U.S.C. § 501 .........................................................................................................................17

28 U.S.C. § 1331 .........................................................................................................................8

28 U.S.C. § 1338(a)-(b) ...............................................................................................................8

28 U.S.C. § 1367(a) .....................................................................................................................8

28 U.S.C. § 1391 .........................................................................................................................8

**Other Authorities**

4 *Callmann on Unfair Competition, Trademarks and Monopolies*
    § 88.3(b) (3d ed. 1970) ..................................................................................................18

## MEMORANDUM OF LAW

### I.    INTRODUCTION

Plaintiffs Tory Burch LLC and River Light V, L.P. (collectively, "Plaintiffs" or "Tory Burch") bring this action against Defendants, Does 1-100 d/b/a the aliases identified in "Schedule A" to the Complaint (collectively, the "Defendants"), for federal trademark infringement and counterfeiting (Count I), false designation of origin (Count II), cyberpiracy (Count III) and violation of the Illinois Uniform Deceptive Trade Practices Act (Count IV).  As alleged in the Complaint, the Defendants are promoting, advertising, marketing, distributing, offering for sale and selling counterfeit products, including footwear, handbags, accessories, clothing, and other products bearing counterfeit versions of Tory Burch's TORY BURCH, REVA, and "TT" trademarks, through various fully interactive commercial Internet websites operating under at least the Defendant Domain Names and Marketplace Accounts listed in Schedule A to the Complaint (collectively, the "Defendant Internet Stores").

Defendants directly target unlawful business activities toward consumers in Illinois and cause harm to Tory Burch's business within this Judicial District, and have caused and will continue to cause irreparable injury to Tory Burch.  Defendants deceive the public by trading upon Tory Burch's reputation and goodwill by using interactive websites to sell and/or offer for sale unlicensed and counterfeit products featuring Tory Burch's trademarks.  Defendants should not be permitted to continue their unlawful activities, and Tory Burch respectfully requests that this Court issue *ex parte*: (1) a temporary restraining order against Defendants enjoining the manufacture, importation, distribution, offer for sale and sale of counterfeit Tory Burch products; (2) an order temporarily transferring Defendants' Domain Names to Tory Burch; (3) an order temporarily restricting transfer of Defendants' assets to preserve Tory Burch's rights to an equitable accounting; (4) an order for expedited discovery allowing Tory Burch to inspect and

1

copy Defendants' records relating to the manufacture, distribution, offer for sale and sale of counterfeit Tory Burch products and Defendants' financial accounts; and (5) an order allowing service by electronic mail and electronic publication.

## II.     STATEMENT OF FACTS

### A.  Tory Burch's Trademarks and Products

Tory Burch is a United States-based brand that produces popular and sought-after Tory Burch branded footwear, handbags, accessories, clothing, and related products and services. One of the most well-known Tory Burch products is the iconic REVA ballerina-style flats (women's shoes), which bear Tory Burch's famous  ("TT") logo.

Tory Burch holds registrations for the trademarks TORY BURCH, REVA, the "TT" logo and stylized variations thereof (collectively, the "TORY BURCH Trademarks") in nearly 50 countries around the world, including United States Registration Nos. 3,386,532; 3,428,373; and 3,563,326. *See* Complaint, Exhibit 1 and the Declaration of Tiffany Walden (the "Walden Declaration") at ¶ 4. The TORY BURCH Trademarks are exclusive to Tory Burch, and are displayed extensively on its products and in its marketing and promotional materials. Walden Declaration at ¶ 6. Tory Burch extensively markets the Tory Burch brand in the United States and around the world and has spent hundreds of thousands of dollars in marketing since 2004 to build the Tory Burch brand. *Id.* These efforts have resulted in substantial sales of Tory Burch products, as well as invaluable consumer goodwill.

Tory Burch's innovative marketing and product designs have enabled Tory Burch to achieve widespread recognition and fame, and have made the TORY BURCH Trademarks some of the most well-known marks in the fashion industry. Tory Burch has earned numerous awards

and accolades, including the "Accessory Designer of the Year" award at the 2009 Council of Fashion Designers of America Awards. *Id.* at ¶ 8.

Since at least 2004, Tory Burch has operated a website at <toryburch.com> that has received hundreds of thousands visitors. *Id.* at ¶ 9. Sales of Tory Burch merchandise at <toryburch.com> represent a significant portion of Tory Burch's business. *Id.* The <toryburch.com> website features proprietary content, images and designs exclusive to Tory Burch. *Id.* Tory Burch is also popular on social media platforms with over 420,000 Facebook fans and over 170,000 Twitter followers. *Id.* at ¶ 10.

The Tory Burch brand has also become well-known as being a favorite of internationally known celebrities, many of whom are featured in photographs wearing Tory Burch products. *Id.* at ¶ 11. Widespread and international media coverage for Tory Burch in multiple fashion and entertainment magazines has occurred in the U.S. and elsewhere, including articles in such international upscale luxury magazines such as *Vogue*, *InStyle*, *Marie Claire*, and *Elle*. *Id.* Articles about the Tory Burch brand have also been featured in *Time Magazine* and *New York Times Style Magazine*. *Id.* at ¶ 12.

Media exposure of Tory Burch is not limited to print periodicals. Tory Burch products have been featured on many television shows broadcasted around the world. In January 2012, Tory Burch was featured on *CBS Sunday Morning*, which called the brand a "fashion phenomenon," well-known by the public for its "distinctive 'double-T' logo." *Id.* at ¶ 13. Furthermore, in 2005, Tory Burch was featured on the Oprah Winfrey Show where Ms. Winfrey hailed Tory Burch as "the next big thing" in fashion. *Id.* Since that time, the widespread fame, outstanding reputation, and significant goodwill associated with the Tory Burch brand have made the TORY BURCH Trademarks invaluable assets.

**B. Defendants' Illegal Activities**

Tory Burch has identified a significant number of domain names linked to fully interactive websites and marketplace listings on platforms such as iOffer, including the Defendant Internet Stores, which are offering for sale, selling and importing counterfeit Tory Burch products to consumers in this Judicial District and throughout the United States. Defendants create websites that look like the legitimate Tory Burch website and are falsely representing to consumers that their counterfeit goods are genuine, authentic, endorsed, and authorized by Tory Burch. The Defendant Internet Stores collectively amount to a massive illegal operation infringing on the intellectual property rights of Tory Burch and others.

Tory Burch's investigation suggests that Defendants are an interrelated group of counterfeiters acting in active concert or copying from each other and are knowingly and willfully manufacturing, importing, distributing, offering for sale and selling products bearing counterfeit versions of the TORY BURCH Trademarks to Illinois residents. *Id*. at ¶ 15. Defendants are directly and personally contributing to, inducing and engaging in the sale of counterfeit Tory Burch products as alleged herein and, on information and belief, often as partners, co-conspirators and/or suppliers in the same transaction, occurrence, or series of transactions or occurrences. *Id*. The counterfeit products for sale in the Defendant Internet Stores bear similar irregularities and indicia of being counterfeit to one another, indicating that the counterfeit products were manufactured by and come from a common source and that Defendants are interrelated. *Id*. In addition, the Defendant Internet Stores include multiple similarities, such as page layout, payment methods, check-out methods, hosting services, text and copyright-protected images copied from Tory Burch's <toryburch.com> website. *Id*.

Defendants use multiple fictitious names and addresses to register and operate the Defendant Internet Stores. *Id*. at ¶ 16. Many of Defendants' names and addresses used to

register the Defendant Internet Stores are incomplete, contain randomly typed letters, or fail to include cities or states. *Id*. With respect to the Defendant Domain Names, many Defendants use a privacy service that conceals the owners' identity and contact information and many accounts are registered to the same alias. *Id*. Defendants will likely continue to register new internet stores, using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses, for the purpose of selling counterfeit Tory Burch products.

Defendants facilitate sales by designing their websites and marketplace listings so that they appear to unknowing consumers to be authorized online retailers or outlet stores selling genuine Tory Burch products. *Id.* at ¶ 17. All of the websites are sophisticated in appearance, accept payment in U.S. dollars, offer shipping to Illinois, and target consumers in Illinois and the United States as a whole. *Id.* Many of the Defendant Domain Names incorporate the TORY BURCH Trademarks and include Tory Burch's copyright-protected content, images and product descriptions, making it very difficult for consumers to distinguish such sites from authorized retailers. *Id.* Tory Burch has not licensed or authorized Defendants to use any of the TORY BURCH Trademarks, and none of the Defendants are authorized resellers of Tory Burch products. *Id.* The Defendant Internet Stores accept payment via credit card or PayPal and ship the counterfeit products in small quantities via the U.S. Postal Service to minimize detection by U.S. Customs and Border Protection. *Id.* Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard® and PayPal® logos. *Id.*

Defendants also attempt to deceive unknowing consumers by using the TORY BURCH Trademarks without authorization within the content, text and/or meta tags of their websites in

order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Tory Burch products. *Id.* at ¶ 18. As a result, links to Defendants' websites show up at or near the top of popular search results and misdirect consumers searching for genuine Tory Burch products. *Id.*

## III.   ARGUMENT

Defendants' purposeful, intentional, and unlawful conduct is causing and will continue to cause irreparable harm to Tory Burch's reputation and the goodwill symbolized by the TORY BURCH Trademarks. To stop Defendants' sale of counterfeit Tory Burch products, Tory Burch respectfully requests that this Court issue a temporary restraining order ordering, among other things, the transfer of the Defendant Domain Names to Tory Burch to redirect to a website providing notice of these proceedings during the pendency of these proceedings and the freezing of Defendants' assets. Without the relief requested by Tory Burch's instant Motion, Defendants' illegal activities will continue unabated, and Tory Burch and consumers will suffer irreparable harm.

In light of the covert nature of offshore counterfeiting activities and the vital need to establish an economic disincentive for trademark counterfeiting, courts now regularly issue such orders. *See, e.g., Tory Burch LLC v. Does 1-100,* No. 1:12-cv-07163 (N.D. Ill. Sept. 14, 2012); *Deckers Outdoor Corp. v. Does 1-100*, No. 1:12-cv-06806 (N.D. Ill. Aug. 28, 2012) (unpublished); *Deckers Outdoor Corp. v. Does 1-100*, No. 1:12-cv-5523 (N.D. Ill. Jul. 24, 2012) (unpublished); *Deckers Outdoor Corp. v. Does 1-100*, No. 1:12-cv-04316 (N.D. Ill. June 11, 2012) (unpublished); *Deckers Outdoor Corp. v. Does 1-1,281,* No. 1:12-cv-01973 (N.D. Ill. Apr. 4, 2012) (unpublished); *Deckers Outdoor Corp. v. Does 1-100*, No. 1:12-cv-00377 (N.D. Ill. Jan. 27, 2012) (unpublished); *Deckers Outdoor Corp. v. Does 1-101,* No. 1:11-cv-07970 (N.D. Ill.

Nov. 15, 2011) (unpublished); *Deckers Outdoor Corp. v. Does 1-55,* No. 1:11-cv-00010 (N.D. Ill. Feb. 3, 2011) (unpublished); *Tory Burch, LLC v. Yong Sheng Int'l Trade Co., Ltd.,* No. 1:10-cv-09336-DAB (S.D.N.Y. January 4, 2011) (unpublished); *The Nat'l Football League v. Chen,* No. 1:11-cv-00344-WHP (S.D.N.Y. Jan. 31, 2011); *Adidas AG, et al,v. 2012jerseyssale.com, et al.* No. 1:12-cv-22263 (S.D. Fla. June 29, 2012); *Burberry Limited v. John Doe 1, et al.,* No. 1:12-cv-0479 (S.D.N.Y Jan. 23, 2012); *Tiffany, (NJ), LLC v. 925sterlingstore.com, et al.*, 12-cv-211160 (S.D. Fla April 4, 2012); *Farouk Sys., Inc. v. Eyou Int'l Trading Co., Ltd.,* No. 4:10-cv-02672 (S.D. Tex. Aug. 2, 2010) (unpublished); *The North Face Apparel Corp., et al. v. Fujian Sharing Import & Export Ltd. Co., et al.,* No. 1:10-cv-01630-AKH (S.D.N.Y. Mar. 16, 2010) (unpublished); *see also, Ford Motor Co. v. Lapertosa,* 126 F. Supp. 2d 463 (E.D. Mich. 2000); *Trans Union LLC v. Credit Research, Inc.,* 142 F. Supp. 2d 1029 (N.D. Ill. 2001); and *In re Vuitton et Fils*, *S.A.,* 606 F.2d 1 (2d Cir. 1979) (holding that ex parte temporary restraining orders are indispensable to the commencement of an action when they are the sole method of preserving a state of affairs in which the court can provide effective final relief).

Rule 65(b) of the Federal Rules of Civil Procedure provides that that the Court may issue an *ex parte* temporary restraining order where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed. R. Civ. P. 65(b); 15 U.S.C. § 1116(d). The Defendants fraudulently promote, advertise, offer to sell and sell goods bearing counterfeits of the TORY BURCH Trademarks via the Defendant Internet Stores. Defendants are creating a false association in the minds of consumers between the Defendants and Tory Burch by deceiving consumers into believing that the goods for sale on Defendants' websites are sponsored or endorsed by Tory Burch. The entry of a temporary restraining order is appropriate because it will immediately stop the Defendants

from benefiting from their wrongful use of the TORY BURCH Trademarks and preserve the status quo until such time as a hearing can be held.

In the absence of a temporary restraining order without notice, the Defendants can and likely will modify registration data and content, change hosts, redirect traffic to other websites in their control, and move any assets from U.S.-based bank accounts, including PayPal accounts. In addition, courts have recognized that civil actions against counterfeiters present special challenges that justify proceeding on an *ex parte* basis. S*ee Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers"). As such, Tory Burch respectfully requests that this Court issue the requested *ex parte* temporary restraining order.

This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq., 28 U.S.C. §§ 1338(a)-(b), and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts. Venue is proper in this Court pursuant 28 U.S.C. § 1391. Furthermore, this Court may properly exercise personal jurisdiction over Defendants since Defendants directly target business activities toward consumers in Illinois and cause harm to Tory Burch's business within this Judicial District. *See* Complaint at ¶¶ 2 and 8.

Through at least the fully interactive commercial Internet websites operating under the Defendant Domain Names and the marketplace listings operated using the Marketplace Accounts, each of the Defendants has targeted and solicited sales from Illinois residents by

offering shipping to Illinois and, on information and belief, have sold counterfeit Tory Burch products to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Tory Burch substantial injury in the State of Illinois.

### A. Standard for Temporary Restraining Order and Preliminary Injunction

District Courts within this Circuit hold that the standard for granting a temporary restraining order and the standard for granting a preliminary injunction are identical. *See, e.g. Charter Nat'l Bank & Trust v. Charter One Fin., Inc.*, No. 1:01-cv-00905, 2001 WL 527404, *1 (N.D. Ill. May 15, 2001) (citation omitted). A party seeking to obtain a preliminary injunction must demonstrate: (1) that its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted. *See TY, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

If the Court is satisfied that these three conditions have been met, then it must consider the irreparable harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Id.* Finally, the Court must consider the potential effect on the public interest (non-parties) in denying or granting the injunction. *Id.* The Court then weighs all of these factors, "sitting as would a chancellor in equity," when it decides whether to grant the injunction. *Id.* (quoting *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992)). This process involves engaging in what the Court has deemed "the sliding scale approach" – the more likely the plaintiff will succeed on the merits, the less the balance of irreparable harms need favor the plaintiff's position. *Id.* The sliding scale approach is not mathematical in nature, rather "it is more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief." *Id.* at 896.

### B. Tory Burch will Likely Succeed on the Merits

i. Tory Burch Will Likely Succeed on Its Trademark Infringement and Counterfeiting Claim.

The greater the movant's likelihood of succeeding on the merits, the less the balance of harms need be in his favor. *See Eli Lilly & Co. v. Natural Answers, Inc.,* 233 F.3d 456, 461 (7th Cir. 2000). A defendant is liable for trademark infringement and counterfeiting under the Lanham Act if it, "without the consent of the registrant, uses in commerce, any reproduction, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods … which such use is likely to cause confusion, or to cause mistake or to deceive." 15 U.S.C. § 1114(1). To prove a *prima facie* case of infringement, Tory Burch must show that: (1) its mark is distinctive enough to be worthy of protection; (2) Defendants are not authorized to use the TORY BURCH Trademarks; and (3) Defendants' use of the TORY BURCH Trademarks causes a likelihood of confusion as to the origin or sponsorship of Defendants' products. *See Neopost Industrie B.V. v. PFE Int'l Inc.,* 403 F. Supp. 2d 669, 684 (N.D. Ill. 2005) (citation omitted). Tory Burch satisfies all three requirements of the Lanham Act to successfully bring a trademark infringement and counterfeiting claim.

Regarding the first two elements, Tory Burch's TORY BURCH Trademarks are inherently distinctive and are registered with the United States Patent and Trademark Office on the Principal Register. The TORY BURCH Trademarks have been used exclusively and continuously by Tory Burch since at least as early as 2004. Walden Declaration at ¶ 4. Furthermore, Tory Burch has never licensed or given Defendants the right to use any of the TORY BURCH Trademarks. *Id.* at ¶ 17.

Tory Burch satisfies the third factor, as well. Some courts do not undertake a factor-by-factor analysis under *Polaroid Corp. v. Polarad Electronics Corp.,* 287 F.2d 492, 495 (2d Cir.

10

1961) because counterfeits, by their very nature, cause confusion. *See Topps Co., Inc. v. Gerrit J. Verburg Co.*, 41 U.S.P.Q.2d 1412, 1417 (S.D.N.Y.1996) ("Where the marks are identical, and the goods are also identical and directly competitive, the decision can be made directly without a more formal and complete discussion of all of the Polaroid factors."); *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir.1987) ("Where, as here, one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion.").

The Seventh Circuit, however, has enumerated seven factors to determine whether there is a likelihood of confusion, namely: (1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of complainant's mark; (6) actual confusion; and, (7) intent of defendants to palm off their products as that of another. *Eli Lilly*, 233 F.3d at 461 (citation omitted). These factors are not a mechanical checklist, and "[t]he proper weight given to each ... will vary from case to case." *Dorr-Oliver, Inc. v. Fluid-Quip, Inc.*, 94 F.3d 376, 381 (7th Cir. 1996). At the same time, although no one factor is decisive, the similarity of the marks, the intent of the defendant, and evidence of actual confusion are the most important considerations. *G. Heileman Brewing Co., Inc. v. Anheuser-Busch, Inc.*, 873 F.2d 985, 999 (7th Cir. 1989).

In this case, Tory Burch plainly satisfies the likelihood of confusion test. The Defendants are selling low-quality counterfeit versions of products that are similar to Tory Burch's products and use counterfeit marks identical to the TORY BURCH Trademarks. As such, the first and second likelihood of confusion factors weigh heavily in favor of Tory Burch.

Tory Burch also satisfies the third factor, namely, area and manner of concurrent use. When considering the third factor, a court looks at "whether there is a relationship between the use, promotion, distribution or sales between the goods or services of the parties." *CAE, Inc. v. Clean Air Eng'g Inc.,* 267 F.3d 660, 681 (7th Cir. 2001). A court also looks to whether the parties use the same channels of commerce, target the same general audience, and/or use similar marketing procedures. *Id*. Here, both Tory Burch and Defendants advertise and sell their products to consumers via the Internet. Both parties use the same means and channels of commerce to target the same Internet consumers looking for genuine Tory Burch products. The Defendant Internet Stores advertise and sell counterfeit Tory Burch products online, just as Tory Burch advertises and sells its genuine Tory Burch products online at <toryburch.com>. Thus, because Defendants target the same Internet consumers by the same means as Tory Burch, this factor also weighs heavily in favor of Tory Burch.

Regarding the fourth factor, degree of consumer care, consumers purchasing Tory Burch products are not a certain, specialized group of people. Rather, the consumer base is a diverse group of people. "[W]hen a buyer class is mixed, the standard of care to be exercised by the reasonably prudent purchaser will be equal to that of the least sophisticated consumer in the class." *Trans Union,* 142 F. Supp. 2d at 1043 (citation omitted). In addition, genuine Tory Burch products are routinely priced from approximately $200 - $500. The counterfeit Tory Burch products offered for sale on Defendants' websites are typically priced slightly below standard retail prices, making it very difficult for consumers to determine that the products are counterfeit. Taking into account the diverse group of Tory Burch consumers and the closely related pricing schemes between the counterfeit products and the genuine Tory Burch products, Tory Burch consumers are very likely to be confused, so this factor favors Tory Burch.

Due to their long-standing use and wide acceptance by the public, the TORY BURCH Trademarks have become famous and associated with exclusive and luxury fashion products. The TORY BRUCH Trademarks are distinctive when applied to Tory Burch's high-quality footwear, handbags, accessories, clothing, and related merchandise. The marks signify to consumers that the products come from Tory Burch and are manufactured to the highest quality standards. Consumers have come to recognize the Tory Burch brand as a source of premium clothing, footwear, and accessories. Thus, the fifth factor, the strength of the marks, also weighs heavily in favor of Tory Burch.

As for the sixth factor, Tory Burch does not need to prove likelihood of confusion with evidence of actual confusion; instead, it merely needs to show *some* evidence of potential confusion. *See Libman Co. v. Vining Indus., Inc.*, 69 F.3d 1360, 1363 (7th Cir.1995). In this case, actual confusion can be inferred because Defendants are selling counterfeit versions of Tory Burch products that use the same TORY BURCH Trademarks. Because the goods look nearly identical, consumers will be confused and think that Defendants' products are genuine Tory Burch products or are sponsored or endorsed by Tory Burch. This factor weighs in favor of Tory Burch.

Regarding the seventh and final factor, Defendants are intentionally using the TORY BURCH Trademarks to confuse and deceive the consuming public into thinking that Defendants' counterfeit products are manufactured by or emanate from Tory Burch. Defendants are purposefully attempting to benefit and trade off of Tory Burch's goodwill and reputation. Therefore, the final factor regarding Defendants' intent also weighs heavily in Tory Burch's favor.

In sum, it is manifestly clear that each of the seven likelihood of confusion factors weighs heavily in favor of Tory Burch, and, therefore, Tory Burch has proved it has a reasonable likelihood of success on the merits for its trademark infringement and counterfeiting claim.

ii.   Tory Burch Is Likely to Succeed on Its False Designation of Origin Claim

A plaintiff bringing a false designation of origin claim under 15 U.S.C. § 1125(a) must show that: (1) defendant used a false designation of origin in connection with products; (2) defendant's use of the products was in interstate commerce; and (3) there is a likelihood that consumers will be confused by defendant's false designation of origin. *Web Printing Controls Co., Inc. v. Oxy-Dry Corp.*, 906 F.2d 1202, 1204 (7th Cir. 1990). The test to be used in determining whether a violation has occurred is whether "the evidence indicates a likelihood of confusion, deception or mistake on the part of the consuming public." *Id.* at 1205. This is the same test that is used for determining whether trademark infringement has occurred under the Lanham Act. *See Neopost*, 403 F. Supp. 2d at 684. Because the TORY BURCH Trademarks are registered marks, and Tory Burch has established a likelihood of success on the merits of its trademark infringement and counterfeiting claim against Defendants (supra), a likelihood of success on the merits for Tory Burch's false designation of origin claim is also established.

iii.   Tory Burch Is Likely to Succeed on Its Cyberpiracy Claim

Tory Burch is likely to succeed on its cyberpiracy claim against the Defendant Domain Names incorporating the Tory Burch word mark. Pursuant to the Anticybersquatting Consumer Protection Act of 1996 (ACPA), a person alleged to be a cybersquatter is liable to the owner of a protected mark if that person: (i) has a bad faith intent to profit from the mark; and (ii) registers, traffics in, or uses a domain name that … is identical or confusingly similar to or dilutive of a mark that is distinctive or famous. 15 U.S.C. § 1125(d)(1)(A). In such cases, in addition to other

damages, "a court may order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark." 15 U.S.C. § 1125(d).

Courts have often noted that one focus of the ACPA is to address counterfeit sellers who "register well-known marks to prey on consumer confusion by misusing the domain name to divert customers from the mark owner's site to the cybersquatter's own site, and target distinctive marks to defraud consumers." *Lucas Nursery & Landscaping, Inc. v. Grosse,* 359 F.3d 806, 809 (6th Cir. 2004).

### 1. *Tory Burch's TORY BURCH Trademarks Are Distinctive and Famous*

Tory Burch's TORY BURCH Trademarks are inherently distinctive and famous with consumers in the U.S. and worldwide. As noted above, Tory Burch has invested hundreds of thousands of dollars in marketing and promoting its TORY BURCH Trademarks in the United States and throughout the world. Celebrities and consumers alike identify the TORY BURCH Trademarks with Tory Burch's high quality products. As a result, Tory Burch is likely to succeed in showing that the TORY BURCH Trademarks are distinctive and famous.

### 2. *Defendants Have a Bad Faith Intent to Profit from the TORY BURCH Trademarks*

Pursuant to the ACPA, a court may consider a myriad of factors when determining whether a person has a bad faith intent to profit from a mark, including the following nine enumerated factors: (1) the trademark or other intellectual property rights of the person, if any, in the domain name; (2) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person; (3) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services; (4) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name; (5) the person's intent to divert consumers from the mark owner's

online location to a site … that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark; (6) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used … the domain name in the bona fide offering of any goods or services; (7) the person's provision of material and misleading false contact information when applying for the registration of the domain name; (8) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to the marks of others; and (9) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous. 15 U.S.C. § 1125(d)(1)(B)(i).

A court is not limited, however, to considering the above nine enumerated factors when determining the presence or absence of bad faith. 15 U.S.C. § 1125(d)(1)(B)(i). Indeed, the factors are "expressly described as indicia that 'may' be considered along with other facts." *Virtual Works, Inc. v. Volkswagen of Am., Inc.*, 238 F.3d 264, 267 (4th Cir. 2001) (citation omitted). The ACPA allows a court to view the totality of the circumstances in making the bad faith determination. *Id.* at 270. Federal courts recognize that "there is no simple formula for evaluating and weighing these factors." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 234 (4th Cir. 2002). However, courts have held that the registration of a domain name incorporating a trademark owner's mark and being used to sell counterfeit versions of the trademark owner's goods is a particularly egregious form of bad faith. *See, e.g. Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567, 584-85 (E.D. Pa. 2002).

In the instant case, it is manifestly clear that the Defendants have acted with a bad faith intent to profit from Tory Burch's famous TORY BURCH Trademarks. Many of the Defendant Domain Names incorporate the TORY BURCH word mark in their entirety, and the

corresponding websites use the TORY BURCH Trademarks and copyrighted photographs without authorization to sell counterfeit Tory Burch products. This is a clear violation of United States law, including Section 1125 of the Trademark Act (15 U.S.C. § 1125) (§ 43 of the Lanham Act) and Section 501 of the Copyright Act (17 U.S.C. § 501).

> 3. *The Domain Names Are Identical or Confusingly Similar to or Dilutive of the TORY BURCH Trademarks*

When dealing with domain names, a court must evaluate an allegedly infringing domain name in conjunction with the content of the website identified by the domain name. *Lamparello v. Falwell*, 420 F.3d 309, 316 (4th Cir. 2005). Here, there can be no question that many of the Defendant Domain Names are identical or confusingly similar to the TORY BURCH Trademarks. Tory Burch's TORY BURCH Trademarks appear without alteration in many of the Defendant Domain Names, clearly referring to Tory Burch's brand. Moreover, as noted above, Defendants design their websites so that they look like authorized online retailers selling genuine Tory Burch products. Defendants perpetuate this illusion by using domain names incorporating Tory Burch's registered trademarks and using Tory Burch's copyrighted photos and other images showing genuine products with detailed product descriptions (often copied and pasted directly from Tory Burch's own website at <toryburch.com>).

In addition, courts have found that the addition of generic or geographic terms, such as "shop," "online" and "store" are not sufficient to distinguish the domain name from a protected mark incorporated therein. *Harrods*, 302 F.3d at 247. As such, the Defendant Domain Names that incorporate any of the TORY BURCH Trademarks are identical and/or confusingly similar to the TORY BURCH Trademarks.

iv.  <u>Tory Burch Is Likely to Succeed on Its Illinois Uniform Deceptive Trade Practice Act Claim</u>

In Illinois, courts resolve unfair competition and deceptive trade practice claims "according to the principles set forth in the Lanham Act." *Spex, Inc. v. Joy of Spex, Inc.*, 847 F. Supp. 567, 579 (N.D. Ill. 1994).  Illinois courts look to federal case law and apply the same analysis to state infringement claims. *Id.* at 579 (citation omitted).  The determination as to whether there is a likelihood of confusion is similar under both the Lanham Act and the Illinois Uniform Deceptive Trade Practice Act. *Am. Broad. Co. v. Maljack Prods., Inc.*, 34 F. Supp. 2d 665, 681 (N.D. Ill. 1998).  Because Tory Burch has established a likelihood of success on the merits of likelihood of confusion in its trademark infringement and counterfeiting claim against Defendants (supra), and the standard is the same under Illinois law, Tory Burch has established a likelihood of success on the merits for its Illinois Uniform Deceptive Trade Practices Act claim.

## C. There Is No Adequate Remedy at Law and Tory Burch Is Likely to Suffer Irreparable Harm in the Absence of Preliminary Relief

The Seventh Circuit has "clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy." *Re/Max N. Cent., Inc. v. Cook,* 272 F.3d 424, 432 (7th Cir. 2001) (citing *Eli Lilly & Co. v. Natural Answers, Inc.,* 233 F.3d 456, 469 (7th Cir.2000)); *Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc.,* 128 F.3d 1111, 1114 (7th Cir. 1997); *Wesley–Jessen Division of Schering Corp. v. Bausch & Lomb Inc.*, 698 F.2d 862, 867 (7th Cir.1983).  Irreparable injury "almost inevitably follows" when there is a high probability of confusion because such injury "may not be fully compensable in damages" *Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1332 (7th Cir. 1977).  "The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods." *Id.* (quoting *Int'l Kennel Club of Chicago, Inc. v. Mighty Star,*

*Inc.,* 846 F.2d 1079, 1092 (7th Cir. 1988); *see also 4 Callmann on Unfair Competition, Trademarks and Monopolies* § 88.3(b) at 205 (3d ed. 1970)). As such, monetary damages are likely to be inadequate compensation for such harm. *Ideal Indus., Inc. v. Gardner Bender, Inc.,* 612 F.2d 1018, 1026 (7th Cir. 1979).

Defendants' unauthorized use of the TORY BURCH Trademarks has and continues to irreparably harm Tory Burch through diminished goodwill and brand confidence, damage to Tory Burch's reputation, loss of exclusivity, and loss of future sales. Walden Declaration at ¶¶ 19-23. The extent of the harm to Tory Burch's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are both irreparable and incalculable, thus warranting an immediate halt to Defendants' infringing activities through injunctive relief. *See Promatek Industries, Ltd. v. Equitrac Corp.,* 300 F.3d 808, 813 (7th Cir. 2002) (Finding that damage to plaintiff's goodwill was irreparable harm for which plaintiff had no adequate remedy at law); *Gateway Eastern Railway Co. v. Terminal Railroad Assoc. of St. Louis,* 35 F.3d 1134, 1140 (7th Cir. 1994) ("[S]howing injury to goodwill can constitute irreparable harm that is not compensable by an award of money damages.") As such, Tory Burch should be granted preliminary relief.

### D. The Balancing of Harms Tips in Tory Burch's Favor

As noted above, if the Court is satisfied that Tory Burch has demonstrated (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable harm if preliminary relief is not granted*,* then it must next consider the irreparable harm that Defendants will suffer if preliminary relief is granted, balancing such harm against the irreparable harm that Tory Burch will suffer if relief is denied. *TY, Inc.*, 237 F.3d at 895. As willful infringers, Defendants are entitled to little equitable consideration. "When considering the balance of hardships between the parties in infringement cases, courts generally favor the

trademark owner." *Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994). This is because "[o]ne who adopts the marks of another for similar goods acts at his own peril since he has no claim to the profits or advantages derived thereby." *Burger King Corp. v. Majeed,* 805 F. Supp. 994, 1006 (S.D. Fla. 1992) (internal quotation marks omitted). Therefore, the balance of harms "cannot favor a defendant whose injury results from the knowing infringement of the plaintiff's trademark." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n,* 929 F. Supp. 473, 478 (D.D.C. 1996).

As Tory Burch has demonstrated, Defendants have been profiting from the sale of counterfeit Tory Burch products. Thus, the balance of equities tips decisively in Tory Burch's favor. As such, equity requires that Defendants be ordered to cease their unlawful conduct.

### E.    Issuance of the Injunction Is in the Public Interest

An injunction in these circumstances is in the public interest because it will prevent consumer confusion and stop defendants from violating federal trademark law. The public is currently under the false impression that defendants are operating their websites with Tory Burch's approval and endorsement. An injunction serves the public interest in this case "because enforcement of the trademark laws prevents consumer confusion." *Eli Lilly*, 233 F.3d at 469.

Federal courts have long held that "the trademark laws ... are concerned not alone with the protection of a property right existing in an individual, but also with the protection of the public from fraud and deceit." *Stahly, Inc. v. M.H. Jacobs Co.,* 183 F.2d 914, 917 (7th Cir. 1950) (citations omitted).

The public interest is further served by protecting "the synonymous right of a trademark owner to control his product's reputation." *James Burrough Ltd. v. Sign of the Beefeater, Inc.*, 540 F.2d 266, 274 (7th Cir. 1976); *see also Shashi, Inc. v. Ramada Worldwide, Inc.,* No. 7:05-cv-00016-JGW-mfu, 2005 WL 552593, *4 (W.D. Va. Mar. 1, 2005) ("It is in the best interest of the

public for the court to defend the integrity of the intellectual property system and to prevent consumer confusion").

In this case, the injury to the public is patent, and the injunctive relief which Tory Burch seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions. The public has the right not to be confused or defrauded as to the source of the goods and services offered by Defendants, or as to the identity of the owner of trademarks and service marks used in connection with those goods and services. Unless Defendants' continuing unauthorized use of the TORY BURCH Trademarks is enjoined, the public will continue to be confused and misled by Defendants' conduct.

For all of these reasons, it is respectfully submitted that granting Tory Burch's Motion for Entry of Temporary Restraining Order is in the public interest.

## IV.    THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE

The Lanham Act authorizes courts to issue injunctive relief "according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark …." 15 U.S.C. § 1116(a). Furthermore, Rule 65(b) of the Federal Rules of Civil Procedure provides that a court may issue a temporary restraining order without notice where facts show that the movant will suffer immediate and irreparable injury, loss, or damage before the adverse party can be heard in opposition. The facts in this case warrant such relief.

### A.  A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Illegal Use of Tory Burch's Marks Is Appropriate

Tory Burch requests an order requiring the Defendants to immediately cease all use of the TORY BURCH Trademarks or substantially similar marks on or in connection with all Defendant Internet Stores. Such relief is necessary to stop the ongoing harm to the TORY

21

BURCH Trademarks and goodwill, and to prevent the Defendants from continuing to benefit from their illegal use of Tory Burch's TORY BURCH Trademarks. The need for *ex parte* relief is magnified in today's global economy where counterfeiters can operate over the Internet in an anonymous fashion. Tory Burch is currently unaware of both the true identities and locations of the Defendants, as well as Defendants' other websites being used to distribute counterfeit products.

Courts regularly authorize immediate injunctive relief in cases involving the unauthorized use of trademarks and counterfeiting. *See, e.g. Tory Burch LLC v. Does 1-100,* No. 1:12-cv-07163 (N.D. Ill. Sept. 14, 2012) (unpublished) (Order granting *Ex Parte* Application for Temporary Restraining Order); *Deckers Outdoor Corp. v. Does 1-100*, No. 1:12-cv-06806 (N.D. Ill. Aug. 28, 2012) (unpublished) (same); *Deckers Outdoor Corp. v. Does 1-100*, No. 1:12-cv-5523 (N.D. Ill. Jul. 24, 2012) (unpublished) (same); *Deckers Outdoor Corp. v. Does 1-100*, No. 1:12-cv-04316 (N.D. Ill. June 11, 2012) (unpublished) (same); *Deckers Outdoor Corp. v. Does 1-1,281,* No. 1:12-cv-01973 (N.D. Ill. Apr. 4, 2012) (unpublished) (same); *Deckers Outdoor Corp. v. Does 1-100*, No. 1:12-cv-00377 (N.D. Ill. Jan. 27, 2012) (unpublished) (same); *Deckers Outdoor Corp. v. Does 1-101,* No. 1:11-cv-07970 (N.D. Ill. Nov. 15, 2011) (unpublished) (same); *Deckers Outdoor Corp. v. Does 1-55,* No. 1:11-cv-00010 (N.D. Ill. Feb. 3, 2011) (unpublished) (same); *Tory Burch, LLC v. Yong Sheng Int'l Trade Co., Ltd.,* No. 1:10-cv-09336-DAB (S.D.N.Y. Jan. 4, 2011) (unpublished) (same*); Farouk Sys., Inc. v. Eyou Int'l Trading Co., Ltd.,* No. 4:10-cv-02672 (S.D. Tex. Aug. 2, 2010) (unpublished) (same); *The North Face Apparel Corp., et al. v. Fujian Sharing Import & Export Ltd. Co., et al.,* No. 1:10-cv-01630-AKH (S.D.N.Y. Mar. 16, 2010) (unpublished) (same); *Chanel, Inc. v. Does 1-172,* No. 2:10-cv-02684-STA-dkv (W.D. Tenn. Nov. 4, 2010) (unpublished) (same); *Ford Motor Co. v. Lapertosa,*

126 F. Supp. 2d at 463 (enjoining Defendant from "using in any way the Internet domain name 'fordrecalls.com'"); *Kraft Food Holdings, Inc. v. Helm,* 205 F. Supp. 2d 942, 956 (N.D. Ill. 2002) (granting preliminary injunction requiring defendant to "immediately" remove all references to version of plaintiff's mark, including removing all references "from metatags, metanames, or any other keywords on his websites").

### B. An Order Transferring the Defendant Domain Names to Tory Burch's Control Is Appropriate

Tory Burch also seeks an order transferring the Defendant Domain Names to Tory Burch to disable and to electronically publish notice of this case to Defendants. Defendants involved in domain name litigation easily can and often will change the ownership of a domain name or continue operating the website while the case is pending. Moreover, counterfeiters involved in domain name litigation can and often do modify their website content to thwart discovery. Accordingly, to preserve the status quo and ensure the possibility of eventual effective relief, courts in trademark cases involving domain names regularly grant the relief requested herein. *See, e.g., Tory Burch LLC v. Does 1-100,* No. 1:12-cv-07163 (N.D. Ill. Sept. 14, 2012) (unpublished) (Order granting *Ex Parte* Application for Temporary Restraining Order including the transfer of domain names); *Deckers Outdoor Corp. v. Does 1-100*, No. 1:12-cv-06806 (N.D. Ill. Aug. 28, 2012) (unpublished) (same); *Deckers Outdoor Corp. v. Does 1-100*, No. 1:12-cv-5523 (N.D. Ill. Jul. 24, 2012) (unpublished) (same); *Deckers Outdoor Corp. v. Does 1-100*, No. 1:12-cv-04316 (N.D. Ill. June 11, 2012) (unpublished) (same); *Deckers Outdoor Corp. v. Does 1-1,281,* No. 1:12-cv-01973 (N.D. Ill. Apr. 4, 2012) (unpublished) (same); *Deckers Outdoor Corp. v. Does 1-100*, No. 1:12-cv-00377 (N.D. Ill. Jan. 27, 2012) (unpublished) (same); *Deckers Outdoor Corp. v. Does 1-101,* No. 1:11-cv-07970 (N.D. Ill. Nov. 15, 2011) (unpublished) (same); *Deckers Outdoor Corp. v. Does 1-55,* No. 1:11-cv-00010 (N.D. Ill. Feb. 3, 2011)

(unpublished) (same); *Tory Burch, LLC v. Yong Sheng Int'l Trade Co., Ltd.,* No. 1:10-cv-09336-DAB (S.D.N.Y. Jan. 4, 2011) (unpublished) (same)*; Farouk Sys., Inc. v. Eyou Int'l Trading Co., Ltd.,* No. 4:10-cv-02672 (S.D. Tex. Aug. 2, 2010) (unpublished) (same); *The North Face Apparel Corp., et al. v. Fujian Sharing Import & Export Ltd. Co., et al.,* No. 1:10-cv-01630-AKH (S.D.N.Y. Mar. 16, 2010) (unpublished) (same); *Chanel, Inc. v. Does 1-172,* No. 2:10-cv-02684-STA-dkv (W.D. Tenn. Nov. 4, 2010) (unpublished) (same); *Chanel, Inc. v. Zhixian,* No. 0:10-cv-60585-JIC (S.D. Fla. Apr. 21, 2010) (unpublished) (same); *Gucci Am., Inc. v. Yan*, No. 0:10-cv-61512-WPD (S.D. Fla. Aug. 30, 2010) (unpublished) (same); *Gucci Am., Inc. v. Does 1-10,* No. 0:10-cv-60328-JAL (S.D. Fla. Mar. 22, 2010) (unpublished) (same); *see also Bd. of Dirs. of Sapphire Bay Condos. W. v. Simpson,* 129 F. App'x 711 (3d Cir. 2005) (affirming District Court's granting of the preliminary injunction ordering defendant to "cancel his registration of the domain name and refrain from using the name, or any derivative thereof, for any web site under his ownership or substantial control"); *Chanel, Inc. v. Paley,* No. 3:09-cv-04979-MHP (N.D. Cal. Nov. 13, 2009) (unpublished) (granting temporary restraining order and disabling domain names at issue); *Philip Morris U.S.A., Inc. v. Otamedia Ltd.,* 331 F. Supp. 2d 228, 246 (S.D.N.Y. 2004) (granting order transferring ownership of Defendant's Internet domain names to Plaintiff); *Ford Motor Co. v. Lapertosa,* 126 F. Supp. 2d at 467 (granting Plaintiff's preliminary injunction because, among other things, "Defendant's misappropriation of the goodwill [Plaintiff] has developed in the mark by registering the [infringing] Internet domain name ... significantly tarnishes [Plaintiff's] reputation").

Moreover, under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third parties who are in active concert with the Defendants that are given notice of the order to transfer the Defendant Domain Names to Deckers. Fed. R. Civ. P. 65. As such, Tory

Burch respectfully requests that an order requiring the relevant registries and/or registrars for the Defendant Domain Names to transfer the domain names to Tory Burch during the pendency of this case be granted.

## C. An Order Preventing the Fraudulent Transfer of Assets Is Appropriate

Tory Burch requests an *ex parte* order restraining Defendants' assets so that Tory Burch's right to an equitable accounting of Defendants' profits from sales of counterfeit Tory Burch products is not impaired. Issuing an *ex parte* order will ensure Defendants' compliance. If such an order is not issued in this case, Defendants are likely to disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before an order is issued. Specifically, upon information and belief, the Defendants in this case hold most of their assets in China, making it easy to hide or dispose of assets, which will render an accounting by Tory Burch meaningless.

In addition, the amount of damages to which Tory Burch is entitled as set forth in the Complaint far exceeds any amount likely contained in any of the Defendants' PayPal accounts or other U.S. financial accounts on the day the accounts are frozen. For example, Tory Burch's prayer for relief requests damages in excess of $2 million minimum from each Defendant. Further, in collecting such a judgment, Tory Burch would be entitled to any monies of the Defendants — not just those attributable to sales of counterfeit Tory Burch products.

Tory Burch has shown a strong likelihood of succeeding on the merits of its trademark infringement and counterfeiting claim, so according to the Lanham Act 15 U.S.C. § 1117, Tory Burch is entitled to an accounting and recovery of profits, damages, and costs from Defendants' infringing actions and sales of counterfeit Tory Burch products.

In *Reebok Int'l Ltd. v. Marnatech Enters.*, *Inc.*, 970 F.2d 552, 559 (9th Cir. 1992), the Ninth Circuit affirmed the district court's ruling limiting the transfer of assets and explicitly stated that "because the Lanham Act authorizes the district court to grant [plaintiff] an accounting of [defendant's] profits as a form of final equitable relief, the district court had the inherent power to freeze [defendant's] assets in order to ensure the availability of that final relief."

Since *Reebok*, many Federal Courts, including the Northern District of Illinois, have found that the Lanham Act grants authority to issue a restraining order freezing a defendant's assets in cases where a plaintiff seeks an equitable remedy; consequently, the courts have granted orders preventing the fraudulent transfer of assets. *See, e.g., Tory Burch LLC v. Does 1-100,* No. 1:12-cv-07163 (N.D. Ill. Sept. 14, 2012) (unpublished) (Order granting *Ex Parte* Application for Temporary Restraining Order including the freezing of Defendants' financial accounts); *Deckers Outdoor Corp. v. Does 1-100*, No. 1:12-cv-06806 (N.D. Ill. Aug. 28, 2012) (unpublished) (same); *Deckers Outdoor Corp. v. Does 1-100*, No. 1:12-cv-5523 (N.D. Ill. Jul. 24, 2012) (unpublished) (same); *Deckers Outdoor Corp. v. Does 1-100*, No. 1:12-cv-04316 (N.D. Ill. June 11, 2012) (unpublished) (same); *Deckers Outdoor Corp. v. Does 1-1,281,* No. 1:12-cv-01973 (N.D. Ill. Apr. 4, 2012) (unpublished) (same); *Deckers Outdoor Corp. v. Does 1-100*, No. 1:12-cv-00377 (N.D. Ill. Jan. 27, 2012) (unpublished) (same); *Deckers Outdoor Corp. v. Does 1-101,* No. 1:11-cv-07970 (N.D. Ill. Nov. 15, 2011) (unpublished (same); *Deckers Outdoor Corp. v. Does 1-55,* No. 1:11-cv-00010 (N.D. Ill. Feb. 3, 2011) (unpublished) (same); *Lorillard Tobacco Co. v. Montrose Wholesale Candies & Sundries, Inc.*, No. 1:03-cv-04844, 2005 WL 3115892 (N.D. Ill. Nov. 8, 2005); *Tory Burch, LLC v. Yong Sheng Int'l Trade Co., Ltd.,* No. 1:10-cv-09336-DAB (S.D.N.Y. Jan. 4, 2011) (unpublished); *Farouk Sys., Inc. v. Eyou Int'l Trading Co.,*

*Ltd.,* No. 4:10-cv-02672 (S.D. Tex. Aug. 2, 2010) (unpublished); *The North Face Apparel Corp., et al. v. Fujian Sharing Import & Export Ltd. Co., et al.,* No. 1:10-cv-01630-AKH (S.D.N.Y. Mar. 16, 2010) (unpublished); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995).

The Northern District of Illinois in *Lorillard* followed the *Reebok* decision when it held that a court has "the authority to enter an order freezing assets in cases where the plaintiff seeks an equitable remedy generally, and specifically in Lanham Act cases." *Lorillard*, 2005 WL 3115892 at *13. Furthermore, Federal Rules of Civil Procedure 64 and 65 provide authority for preliminary injunctions and the freezing of assets, and the Lanham Act provides for an accounting and recovery of profits, costs, and damages. Fed. R. Civ. P. 64-65; 15 U.S.C. § 1117. Since Tory Burch seeks recovery of Defendants' profits, an order freezing the Defendants' assets is within the Court's authority and should be granted. *Lorillard*, 2005 WL 3115892 at *13. Moreover, under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third parties who are in active concert with the Defendants that are given notice of the order to freeze assets of the Defendants. Fed. R. Civ. P. 65.

Tory Burch has shown a likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendants' activities, and that, unless Defendants' assets are frozen, Defendants will likely hide or move their ill-gotten funds to offshore bank accounts. Accordingly, it is respectfully submitted that the granting of an injunction preventing the transfer of Defendants' assets is proper.

### D. Tory Burch Is Entitled to Expedited Discovery

The United States Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Vance v. Rumsfeld*, No. 1:06-cv-06964, 2007 WL 4557812, *6 (N.D. Ill. Dec. 21, 2007)

(quoting *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380 (1978)).   A district court has wide latitude in determining whether to grant a party's request for discovery. *Id.* (citation omitted).   Furthermore, courts have broad power over discovery and may permit discovery in order to aid in the identification of unknown defendants.   *See* Fed. R. Civ. P. 26(b)(2); *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).

As demonstrated above, Tory Burch is being irreparably harmed by the manufacture, importation, offering for sale, distribution, and sale of counterfeit Tory Burch products. Defendants have gone to great lengths to conceal their true identities and/or move outside of this Court's reach by, among other things, excluding any identifiable information from Defendants' websites and using false and incomplete information in their registrations for the Defendant Domain Names.   Defendants are using third party payment processors such as Visa, PayPal and Western Union which helps increase their anonymity by interposing a third party between the consumer and Defendants.   Without being able to discover Defendants' bank and payment system accounts, any asset restraint would be of limited value because Tory Burch would not know the entities upon whom to serve the order.

Tory Burch respectfully requests an *ex parte* Order allowing expedited discovery to discover bank and payment system accounts Defendants use for their counterfeit sales operations.   The discovery requested on an expedited basis in Tory Burch's Proposed Temporary Restraining Order has been limited to include only that which is essential to prevent further irreparable harm.   Discovery of these financial accounts so that they can be frozen is necessary to ensure that these activities will be contained.

Under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third parties who are in active concert with the Defendants that are given notice of the order to

provide expedited discovery in this action. Fed. R. Civ. P. 65. Tory Burch has worked with the same third parties in previous lawsuits and is not aware of any reason that Defendants or third parties can not comply with these expedited discovery requests without undue burden. Further, all relevant third parties have in fact complied with identical requests in previous similar cases. More importantly, Defendants have engaged in many deceptive practices in an effort to hide their identities and accounts. Without the requested relief, Tory Burch's seizure Order and asset restraint may have little meaningful effect. Accordingly, Tory Burch respectfully requests that the expedited discovery be granted.

### E. Service of Process by E-mail and Electronic Publication Is Warranted in this Case

Pursuant to Federal Rule of Civil Procedure 4(f)(3), Tory Burch requests an order allowing service of process on Defendants via electronic mail ("e-mail") to the registrant of each of the Defendant Domain Names at the e-mail address provided by the registrant to the registrar, and by electronically publishing notice of this action at the Defendant Domain Names. Electronic service is appropriate and necessary in this case because the Defendants, on information and belief: (1) have provided false names and physical address information in their registrations for the Defendant Domain Names in order to conceal their locations and avoid liability for their unlawful conduct; and (2) rely primarily on electronic communications to communicate with their registrars and customers, demonstrating the reliability of this method of communication by which the registrants of the Defendant Domain Names may be apprised of the pendency of this action. Tory Burch respectfully submits that an order allowing service of process solely via e-mail and electronic publication in this case will benefit all parties and the Court by ensuring that the registrants of the Defendant Domain Names receive immediate notice of the pendency of this action, thus allowing this action to move forward expeditiously. Absent

the ability to serve the Defendants in this manner, Tory Burch will almost certainly be left without the ability to pursue a remedy.

According to regulations established by the Internet Corporation for Assigned Names and Numbers ("ICANN"), an individual or entity that registers a domain name is required to provide accurate contact information for him/her/itself when registering the domain name. *See* Declaration of Justin R. Gaudio (the "Gaudio Declaration") at ¶ 2. As demonstrated, the registrants for the Defendant Domain Names have ignored the applicable ICANN regulations and provided false physical address information to the domain name registrars in order to avoid liability for their criminal conduct. However, as a practical matter, the registrants of the Defendant Domain Names generally must maintain an accurate e-mail address where their registrars may communicate with them regarding issues related to the purchase, transfer, and maintenance of the various accounts. Moreover, it is necessary for merchants, such as the registrants of the Defendant Domain Names, who operate entirely online, to provide customers with accurate e-mail addresses by which the customer can contact the merchant to ask questions about the merchant's products, place orders from the merchant's Internet websites, and receive information from the merchant regarding the shipment of an order.

Tory Burch conducted searches of the public WhoIs information regarding the Defendant Domain Names and identified the e-mail addresses that the registrants provided to the Registrars. Walden Declaration at ¶ 14. Many of Defendants' names and addresses used to register the Defendant Domain Names are incomplete, contain randomly typed letters, fail to include cities or states, or use a privacy service that conceals this information. Identical contact information among multiple domain names also suggests that many of the aliases used to register the Defendant Domain Names are used by the same individual or entity. Thus, based on the

provision of invalid postal addresses and likely fictitious name(s), Tory Burch cannot serve the Defendants by traditional means.

Federal Rule of Civil Procedure 4(f)(3) allows this Court to authorize service of process by any means not prohibited by international agreement as the Court directs. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002). Rule 4 does not require that a party attempt service of process by those methods enumerated in Rule 4(f)(2) before petitioning the court for alternative relief under Rule 4(f)(3). *Id*. at 1014-15. The Ninth Circuit in *Rio Properties* held, "without hesitation," that e-mail service of an online business defendant "was constitutionally acceptable." *Id.* at 1017. The Court reached this conclusion in part because the defendant conducted its business over the Internet, used e-mail regularly in its business, and encouraged parties to contact it via e-mail.

Similarly, a number of Courts, including the Northern District of Illinois, have held that alternate forms of service pursuant to Rule 4(f)(3), including e-mail service, are appropriate and may be the only means of effecting service of process "when faced with an international e-business scofflaw." *Id.* at 1017; s*ee also, e.g., Tory Burch LLC v. Does 1-100,* No. 1:12-cv-07163 (N.D. Ill. Sept. 14, 2012) (unpublished); *Deckers Outdoor Corp. v. Does 1-100*, No. 1:12-cv-06806 (N.D. Ill. Aug. 28, 2012) (unpublished); *Deckers Outdoor Corp. v. Does 1-100*, No. 1:12-cv-5523 (N.D. Ill. Jul. 24, 2012) (unpublished); *Deckers Outdoor Corp. v. Does 1-100*, No. 1:12-cv-04316 (N.D. Ill. June 11, 2012) (unpublished); *Deckers Outdoor Corp. v. Does 1-1,281,* No. 1:12-cv-01973 (N.D. Ill. Apr. 4, 2012) (unpublished); *Deckers Outdoor Corp. v. Does 1-100*, No. 1:12-cv-00377 (N.D. Ill. Jan. 27, 2012) (unpublished); *Deckers Outdoor Corp. v. Does 1-101,* No. 1:11-cv-07970 (N.D. Ill. Nov. 15, 2011) (unpublished); *Deckers Outdoor Corp. v. Does 1-55,* No. 1:11-cv-00010 (N.D. Ill. Feb. 3, 2011) (unpublished); *MacLean-Fogg Co. v.*

*Ningbo Fastlink Equip. Co., Ltd.*, No. 1:08-cv-02593, 2008 WL 5100414, *2 (N.D. Ill. Dec. 1, 2008) (holding e-mail and facsimile service appropriate); *Farouk Sys., Inc. v. Eyou Int'l Trading Co., Ltd.,* No. 4:10-cv-02672 (S.D. Tex. Aug. 2, 2010) (unpublished); *The North Face Apparel Corp., et al. v. Fujian Sharing Import & Export Ltd. Co., et al.,* No. 1:10-cv-01630-AKH (S.D.N.Y. Mar. 16, 2010) (unpublished); *Popular Enters., LLC v. Webcom Media Group, Inc.*, 225 F.R.D. 560, 563 (E.D. Tenn. 2004) (quoting *Rio*, 284 F.3d at 1018) (allowing e-mail service); s*ee also Juniper Networks, Inc. v. Bahattab*, No. 1:07-cv-01771-PLF-AK, 2008 WL 250584, *1-2, (D.D.C. Jan. 30, 2008) (citing *Rio*, 284 F.3d at 1017-1018; other citations omitted) (holding that "in certain circumstances ... service of process via electronic mail ... is appropriate and may be authorized by the Court under Rule 4(f)(3) of the Federal Rules of Civil Procedure"). Tory Burch submits that allowing service solely by e-mail and electronic publication in the present case is appropriate and comports with constitutional notions of due process, particularly given the decision by the registrants of the Defendant Domain Names to conduct their illegal Internet-based activities anonymously.

Tory Burch is unable to determine the exact physical whereabouts or identities of the registrants of the Defendant Domain Names. However, Tory Burch has good cause to suspect the registrants of the respective Defendant Domain Names are all residents of China. The United States and the People's Republic of China are both signatories to the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil and Commercial Matters (the "Convention"). Gaudio Declaration at ¶ 3. U.S. Courts have routinely authorized international mail and e-mail service notwithstanding the applicability of the Hague Convention. *See e.g.*, *Brockmeyer v. May*, 383 F.3d 798, 800 (9th Cir. 2004) ("[W]e join the Second Circuit in holding that the Hague Convention allows service of process by international mail"); *Nanya Tech. Corp.*

*v. Fujitsu Ltd.*, No. 1:06-cv-00025, 2007 WL 269087, *6 (D. Guam Jan. 26, 2007) (Hague Convention, to which Japan is a signatory, did not prohibit e-mail service upon Japanese defendant); *Popular Enters.*, 225 F.R.D. at 562 (recognizing that, while "communication via e-mail and over the internet is comparatively new, such communication has been zealously embraced within the business community"). In addition, the law of the People's Republic of China does not prohibit the service of process by e-mail and allows for alternate service means in certain circumstances. Gaudio Declaration at ¶ 4. As such, Tory Burch respectfully requests this Court's permission to serve Defendants via e-mail.

## V.   A BOND SHOULD SECURE THE INJUNCTIVE RELIEF

The posting of security upon issuance of a temporary restraining order or permanent injunction is vested in the Court's sound discretion. *Mascio v. Pub. Emp't Ret. Sys. of Ohio,* 160 F. 3d 310, 313 (6th Cir. 1998); *Rathmann Grp. v. Tanenbaum,* 889 F.2d 787, 789 (8th Cir. 1989); *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.,* 174 F.3d 411 (4th Cir. 1999).

Because of the strong and unequivocal nature of Tory Burch's evidence of counterfeiting, infringement and unfair competition, Tory Burch respectfully requests that this Court require Tory Burch to post a bond of no more than Ten Thousand U.S. Dollars ($10,000.00). *See, e.g., Tory Burch LLC v. Does 1-100,* No. 1:12-cv-07163 (N.D. Ill. Sept. 14, 2012) (unpublished) ($10,000 bond); *Deckers Outdoor Corp. v. Does 1-100*, No. 1:12-cv-06806 (N.D. Ill. Aug. 28, 2012) (unpublished) ($10,000 bond); *Deckers Outdoor Corp. v. Does 1-100*, No. 1:12-cv-5523 (N.D. Ill. Jul. 24, 2012) (unpublished) ($10,000 bond); *Deckers Outdoor Corp. v. Does 1-100*, No. 1:12-cv-04316 (N.D. Ill. June 11, 2012) (unpublished) ($10,000 bond)*; Deckers Outdoor Corp. v. Does 1-1,281,* No. 1:12-cv-01973 (N.D. Ill. Apr. 4, 2012) (unpublished) ($10,000 bond)*; Deckers Outdoor Corp. v. Does 1-100*, No. 1:12-cv-00377 (N.D. Ill. Jan. 27, 2012)

(unpublished) ($10,000 bond); *Builder's World, Inc. v. Marvin Lumber & Cedar, Inc.,* 482 F. Supp. 2d 1065, 1078 (E.D. Wis. 2007) ($1,000 bond); *Habitat Educ. Ctr. v. U.S. Forest Serv.,* 607 F.3d 453, 456 (7th Cir. 2010) ($10,000 bond); *True Religion Apparel, Inc., v. Xiaokang Lee,* No. 1:11-cv-08242-HB (S.D.N.Y. Nov. 18, 2011) (unpublished) ($10,000 bond); *The Nat'l Football League v. Chen,* No. 1:11-cv-00344-WHP (S.D.N.Y. Jan. 31, 2011) ($10,000 bond); *Farouk Sys., Inc. v. Eyou Int'l Trading Co., Ltd.,* No. 4:10-cv-02672 (S.D. Tex. Aug. 2, 2010) (unpublished) ($10,000 bond); *Chanel, Inc. v. Zhixian,* No. 0:10-cv-60585-JIC (S.D. Fla. Apr. 21, 2010) (unpublished) ($10,000 bond); *Chanel, Inc. v. Paley,* No. 3:09-cv-04979-MHP (N.D. Cal. Nov. 13, 2009) (unpublished) ($10,000 bond*); Gucci Am., Inc. v. Curveal Fashion,* No. 1:09-cv-08458-RJS-THK (S.D.N.Y. Oct. 9, 2009) (unpublished) ($10,000 bond).

## VI.    CONCLUSION

Defendants' counterfeiting operations are irreparably harming Tory Burch's business, its famous Tory Burch brand and consumers. Without entry of the requested relief, Defendants' sale of the counterfeit products will continue to lead prospective purchasers and others to believe that Defendants' counterfeit products have been manufactured by or emanate from Tory Burch, when in fact, they have not. Therefore, entry of an *ex parte* order is necessary to protect Tory Burch's trademark rights, to prevent further irreparable harm to Tory Burch and the consuming public, and to preserve the status quo. In view of the foregoing and consistent with previous similar cases, Tory Burch respectfully requests that this Court enter a temporary restraining order in the form submitted herewith and set a hearing regarding Tory Burch's preliminary injunction before the expiration of the temporary restraining order.

Dated this 13th day of November 2012.

Respectfully submitted,

___/s/ Justin R. Gaudio_____
Kevin W. Guynn
Amy Ziegler
Justin R. Gaudio
Greer, Burns & Crain, Ltd.
300 South Wacker Drive
Suite 2500
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
kguynn@gbclaw.net
aziegler@gbclaw.net
jgaudio@gbclaw.net